# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

STEVEN CURRY,
    Plaintiff,

vs.

No. 3:17–cv–00751–DRH

KIMBERLY S. BUTLER,
TODD BROOKS, GAIL WALLS,
JOHN TROST, DOCTOR SIDDIQUI,
WEXFORD HEALTH SOURCES,
INC., and WARDEN LASHBROOKS,
    Defendants.

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Plaintiff Steven Curry, an inmate in Menard Correctional Center, brings this action for deprivation of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff requests compensatory and punitive damages, and a preliminary injunction ordering surgery to close a hole in his heart and transfer to another prison. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## **The Complaint**

At or around the time Plaintiff entered the IDOC he underwent open-heart surgery to treat a stab wound in his left chest. (Doc. 1, p. 22). He currently suffers from a hole in his heart and a ventricular septal defect. *Id.* Plaintiff alleges that all of the named defendants became aware of his medical condition at one time or another. *Id.*

Upon transferring to Menard, Plaintiff immediately began experiencing shortness of breath, extreme pain, tightness to his chest, weakness throughout his body, painful headaches, and "mental pain." *Id.* Plaintiff put in for sick call, and saw an unnamed nurse, who referred him to Dr. Trost. *Id.* Plaintiff attributed at least some of his symptoms to "inadequate" cell conditions. *Id.*

Trost told Plaintiff he would submit a request for Plaintiff to be referred to an outside hospital for testing, and would speak to the administration about moving Plaintiff to an adequately sanitized cell. (Doc. 1, p. 23). When Plaintiff followed up with Trost (after filing an emergency grievance to Butler), Trost told him that the referral had been denied by Wexford because the state doesn't want to pay money for inmates' health. *Id.* According to Trost, Plaintiff needed to have the hole in his heart fixed while it is still in the early stages. *Id.* Trost also told Plaintiff he would not be moving cells. (Doc. 1, p. 24). Plaintiff wrote another grievance to Butler, which was disregarded.[1] *Id.* Plaintiff's symptoms worsened as a result of Trost's denial. *Id.*

Plaintiff wrote to health care administrator Gail Walls regarding his heart condition. (Doc. 1, p. 25). She responded on July 30, 2015 and told him that collegial had denied his request, and that the medical unit would continue to monitor Plaintiff on site. (Doc. 1, p. 57).

Plaintiff wrote another grievance to Butler regarding his situation, after which he was sent to an outside hospital to have the test Trost initially recommended a year prior. (Doc. 1, p. 26). Medical records show that Plaintiff was approved for an outpatient visit on May 3, 2016. (Doc. 1, p. 51). The outside doctor confirmed that Plaintiff had a hole in his heart and the ventricular septal defect diagnosis. (Doc. 1, p. 26). But after his medical furlough, no other

---

[1] Plaintiff attached some grievances to his Complaint, including one addressed to Butler dated November 2, 2014 (Doc. 1, p. 9).

steps were taken to ensure that Plaintiff received adequate medical treatment, nor was he moved to a more sanitary cell. *Id.*

Butler resigned as Warden of Menard in 2016, and was replaced by Jacqueline Lashbrooks. (Doc. 1, p. 27). Trost resigned as well. *Id.* Plaintiff experienced re-occurring chest pain, and filed an emergency grievance to Lashbrooks, alleging that he experienced a lack of a proper medical treatment, that his cell conditions were inadequate, and that Menard lacked staff to conduct physical therapy for Plaintiff. *Id.* Lashbrooks expedited the grievance as an emergency on June 13, 2017, and Plaintiff was referred to Dr. Siddiqui on June 15, 2017. (Doc. 1, pp. 19-20, 27-28). Siddiqui suggested that Plaintiff be urgently referred to an outside hospital, but as of the date of the Complaint, Plaintiff still has not been sent out. (Doc. 1, p. 28).

Plaintiff alleges that he was celled in the North 2 segregation unit, where he suffered from poor ventilation, poor air quality, dust, rust, mold, poor water outlets, residual mace pepper spray, soiled pillows and mattress, chemical concerns, and inadequate cleaning supplies. (Doc. 1, p. 23).

Plaintiff alleges that Butler was responsible for the supervision and protection of inmates and staff during her time as Warden, and for ensuring compliance with all departmental directives and rules. (Doc. 1, p. 25).

Plaintiff alleges that Wexford Health Sources is contracted to provide health care throughout the Illinois Department of Corrections and to furnish medical staff to prisons. (Doc. 1, p. 27). Plaintiff further alleges that Wexford fails to

supply Menard with adequate medical equipment or licensed staff that is capable of monitoring and treating Plaintiff's medical condition. *Id.* Wexford has denied Plaintiff surgery to close the hole in his heart and physical therapy to rehabilitate him. *Id.*

Plaintiff alleges that Brooks supervises the health care department and the grievance committee. (Doc. 1, p. 30).

## **Discussion**

Based on the allegations of the Complaint, the Court finds it convenient to divide the pro se action into 3 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The following claims survive threshold review:

> **Count 1** – Butler, Brooks, Walls, Trost, Siddiqui, and Lashbrooks were deliberately indifferent to Plaintiff's serious heart condition in violation of the Eight Amendment;
>
> **Count 2** – Wexford Health Sources had an unconstitutional policy or custom that prevented Plaintiff from receiving treatment for his serious heart condition in violation of the Eight Amendment;
>
> **Count 3** – Butler, Trost, and Lashbrooks were deliberately indifferent to Plaintiff's unconstitutional conditions of confinement in violation of the Eighth Amendment;

As to Plaintiff's **Count 1**, prison officials impose cruel and unusual punishment in violation of the Eighth Amendment when they are deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016). In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he

1) suffered from an objectively serious medical condition; and 2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016). An objectively serious condition includes an ailment that has been "diagnosed by a physician as mandating treatment," one that significantly affects an individual's daily activities, or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). The subjective element requires proof that the defendant knew of facts from which he could infer that a substantial risk of serious harm exists, and he must actually draw the inference. *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

"Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 842 (1994). The Eight Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Deliberate indifference may also be shown where medical providers persist in a course of treatment known to be ineffective. *Berry v. Peterman*, 604 F.3d 435, 441-42 (7th Cir. 2010); *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005).

Here Plaintiff has alleged that he has a heart defect that causes him shortness of breath, extreme pain, tightness to his chest, weakness throughout his body, painful headaches, and "mental pain." He has also submitted medical records documenting the defect. Plaintiff has adequately alleged that he suffers from a serious medical need.

Plaintiff has alleged that Butler, Brooks, Walls, Trost, Siddiqui, and Lashbrooks were all deliberately indifferent to his medical need by refusing to ensure that he received surgery and physical therapy. The medical records do not reflect any recommendation for either surgery or physical therapy, but at the pleading stages Plaintiff has adequately alleged that Defendants were deliberately indifferent, with several exceptions.

Warden Lashbrooks must be dismissed in her individual capacity at this time. Plaintiff alleges that Lashbrooks is liable because he wrote her an emergency grievance. But a review of the grievance attached to the Complaint shows that Lashbrooks expedited the grievance as an emergency, referred Plaintiff to the health care unit, and ultimately affirmed the grievance. Lashbrooks did not fail to take action when confronted with Plaintiff's medical situation; on the contrary she immediately referred him to the health care unit. *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008) (finding non-medical defendants not liable when they responded readily and promptly to each of the plaintiff's grievances and letters). Lashbrooks' response is dated a month before Plaintiff filed the Complaint; there is no allegation that Plaintiff submitted a subsequent grievance

or that Lashbrooks had any reason to think that he was not receiving medical attention since addressing Plaintiff's earlier grievance. **Therefore Lashbrooks shall be dismissed from Count 1 without prejudice in her individual capacity.** Lashbrooks remains a defendant for the purposes of injunctive relief.

The Court also notes that Plaintiff has alleged that Butler and Brooks are liable because of their supervisory positions. Specifically, Plaintiff alleged that Butler was liable because in her prior position as warden, she supervised both inmates and staff and was responsible for the proper implementation of department regulations. Likewise, Plaintiff's allegation as to Brooks is that Brooks had a supervisory role over the medical department and other departments. There is no supervisory liability under § 1983. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) ("The doctrine of *respondeat superior* does not apply to § 1983 actions; thus to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.'") (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *Duncan v. Duckworth*, 644 F.2d 653, 655-56 (7th Cir. 1981). If Butler and Brooks are liable, it is for their own personal involvement in this chain of events. Plaintiff has alleged that both Butler and Brooks[2] were aware of his condition through the grievance process and failed to act, so Count 1 will proceed

---

[2] Brook's name is not on any of the grievances submitted as exhibits to this Complaint

against them, but to the extent that Plaintiff is trying to stake their liability on their supervisory positions, the claim fails.

As to **Count 2**, for purposes of § 1983, the courts treat "a private corporation acting under color of state law as though it were a municipal entity," *Jackson v. Ill. Medi–Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002), so Wexford will be treated as a municipal entity for this suit. "[T]o maintain a § 1983 claim against a municipality, [a plaintiff] must establish the requisite culpability (a 'policy or custom' attributable to municipal policymakers) and the requisite causation (the policy or custom was the 'moving force' behind the constitutional deprivation)." *Gable v. City of Chicago,* 296 F.3d 531, 537 (7th Cir. 2002) (*quoting Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691 (1978)).

Plaintiff has alleged that Wexford's staffing and allocation of resources to Menard is in part responsible for the delays in his treatment. He has also alleged that he is not getting necessary surgery because of policies regarding cost, which may or may not be attributable to Wexford. At this point, it is sufficient that Plaintiff has alleged that he suffers from a serious medical need and made a plausible allegation that delays in his care are attributable to Wexford's policies. **Therefore Count 2 shall proceed against Wexford.**

Turning to **Count 3**, the Eighth Amendment can be violated by conditions of confinement in a jail or prison when (1) there is a deprivation that is, from an objective standpoint, sufficiently serious that it results "in the denial of 'the minimal civilized measure of life's necessities,' " and (2) where prison officials are

deliberately indifferent to this state of affairs. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). Prisons must have adequate ventilation, sanitation, bedding, and hygiene products. *Lewis v. Lane*, 816 F.2d 1165, 1171 (7th Cir. 1987).

Prison officials demonstrate deliberate indifference when they "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn . . . and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Plaintiff has alleged that he was not housed in a sanitary cell. Specifically, he has alleged that his cell did not have adequate ventilation, and also had other issues that made breathing difficult. He further alleged that he did not receive enough cleaning supplies. Further, he alleges that the combination of these conditions exacerbated his symptoms associated with his heart murmur. Despite complaining about these symptoms several times, he continued to endure them. At the pleading stages, that is sufficient to state a claim, and so **Count 3 will be permitted to survive threshold review.**

However, as in Count 1, Lashbrooks will be dismissed from this Count in her individual capacity. The grievance attached to the Complaint addressed to Lashbrooks was expedited as an emergency, and Lashbrooks had the North Two cell house supervisor/Major check Plaintiff's cell. The officer noted no issues with Plaintiff's cell or housing unit in general. Lashbrooks is entitled to rely on that representation; it is not deliberate indifference to delegate tasks to subordinates.

Plaintiff has not alleged that he submitted another grievance on this point to Lashbrooks that went ignored. For these reasons, **Lashbrooks shall be dismissed from Count 3 in her individual capacity.** She remains a defendant in her official capacity for the purposes of injunctive relief.

### Pending Motions

Plaintiff's Motion for Recruitment of Counsel and Motion to Supplement his motion for counsel will be addressed by a United States Magistrate Judge. (Doc. 3) (Doc. 5).

As this Order provides a status of the case, Plaintiff's Motions for Status are now **MOOT** (Doc. 7) (Doc. 9).

Plaintiff also included a request for a preliminary injunction in his request for relief. Plaintiff is informed that the best practice is to file a separate motion for a preliminary injunction at the time the complaint is filed. The Clerk of Court is **DIRECTED** to docket a motion for a preliminary injunction, and the magistrate judge assigned to this case shall address the preliminary injunction as soon as practicable.

### Disposition

**IT IS HEREBY ORDERED** that **Counts 1-3** survive threshold review. Lashbrooks is dismissed from **Counts 1 and 3** in her individual capacity. She remains a defendant only in her official capacity for the purposes of injunctive relief. The Clerk of Court is **DIRECTED** to add a motion for preliminary

injunction to the docket.  Plaintiff's Motions for Status are **MOOT.**  (Doc. 7) (Doc. 9).

  **IT IS ORDERED** that the Clerk of Court shall prepare for Defendants Butler, Brooks, Walls, Trost, Siddiqui, Wexford Health Source, Inc., and Lashbrooks:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

  **IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his

address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

Digitally signed by Judge David R. Herndon
Date: 2017.09.26 15:31:06 -05'00'

**UNITED STATES DISTRICT JUDGE**