IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

STEVEN CURRY,

      **Plaintiff,**

v.                                                                            No. 17-cv-751-DRH-RJD

KIMBERLY BUTLER, et al.,

      **Defendants.**

## MEMORANDUM and ORDER

**HERNDON, District Judge:**

### INTRODUCTION & BACKGROUND

This matter comes before the Court on the Report and Recommendation ("the Report") issued by Magistrate Judge Reona J. Daly on June 15, 2018 (doc. 118). The Report recommends that the Court grant both defendants' Lashbrook, Butler, Brooks, and Walls Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (doc. 100) and defendants' Wexford Health Source Inc., Trost, and Siddiqui Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (doc. 97) (together, the "summary judgment motions"). Plaintiff Curry has objected[1] to the Report's finding that he had not exhausted his administrate remedies prior to filing suit (doc. 119). Based on the applicable law,

---

[1] Plaintiff Curry titled his objections "an appeal," however, due to the response being filed within the standard objections period noted to all parties in the Report, the Court construes the motion as plaintiff's objections to the Report.

1

the record, and the following, the Court **ADOPTS** the Report in its entirety (doc. 118) and **GRANTS** the summary judgment motions (docs. 97; 100).

Plaintiff Curry brought this pro se action for deprivation of his constitutional rights pursuant to 42 U.S.C. § 1983. The Court screened Curry's complaint pursuant to 28 U.S.C. § 1915A and the following claims were allowed to proceed:

> **Count 1** – Butler, Brooks, Walls, Trost, Siddiqui, and Lashbrook were deliberately indifferent to Plaintiff's serious heart condition in violation of the Eighth Amendment;
>
> **Count 2** – Wexford Health Sources had an unconstitutional policy or custom that prevented Plaintiff from receiving treatment for his serious heart condition in violation of the Eighth Amendment;
>
> **Count 3** – Butler, Trost, and Lashbrook were deliberately indifferent to Plaintiff's unconstitutional conditions of confinement in violation of the Eighth Amendment.

Thereafter, defendants filed their summary judgment motions alleging that plaintiff had not exhausted his administrative remedies pursuant to 42 U.S.C. § 1997e(a), prior to filing the present lawsuit. Defendants claim as an inmate of the Illinois Department of Corrections ("IDOC"), being housed at Menard Correctional Center ("Menard"), plaintiff did not follow the proper grievance procedure set up by Menard and the Illinois Administrative Code to fully exhaust his claims; here, that plaintiff is allegedly receiving inadequate medical care due to a heart condition by not obtaining surgical repair and other medical procedures plaintiff deems necessary. Accordingly, defendants ask the Court to dismiss plaintiff's First Amended Complaint without prejudice.

In support of the motions for summary judgment, defendants attached as exhibits all plaintiff's grievances and documents related to said grievances, which pertain to plaintiff's claim of being denied surgery to repair his heart condition.[2] Included in the documents, are responses from Menard and IDOC staff which articulate their decisions regarding plaintiff's medical claims and directions to plaintiff on how to proceed with his grievances, if he so chose to do so. According to defendants, as fully demonstrated by the exhibits, plaintiff failed to follow proper protocol to exhaust his claims internally prior to filing suit.

In opposition to the summary judgment motions, plaintiff alleges that he has complied with the exhaustion requirements of the Prison Litigation Reform Act as he made defendants aware of his health problems via his grievance filings and asserts that defendants have withheld grievance documents from him and the Court (*see e.g.* doc. 104 at §§ 4; 16), that (presumably) would demonstrate his compliance with the grievance procedure.

Magistrate Judge Daly issued her Report on June 15, 2018 (doc. 118) recommending that the Court grant the summary judgment motions (docs. 97; 100). The Report was sent to the parties with a notice informing them of their rights to appeal by way of filing "objections" within 14 days of service of the Report. Plaintiff timely filed his "objections" on June 25, 2018 (doc. 119).

---

[2] On June 5, 2018, in response to plaintiff's motion to compel (doc. 108), defendants Brooks, Butler, Lashbrook, and Walls sent additional grievance-related documents to plaintiff, even if no bearing on the heart condition issue. *See* doc. 115.

## ANALYSIS

The Court's review of the Report is governed by 28 U.S.C. § 636(b)(1)(C), which provides in part:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

*Id.*

Fed. R. Civ. P. 72(b) also directs that the Court must only make a *de novo* determination of those portions of the report and recommendation to which specific written objection has been made. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). If no objection or only a partial objection is made, the Court reviews those unobjected portions for clear error. *Id.* In addition, failure to file objections with the district court "waives appellate review of both factual and legal questions." *Id.* Under the clear error standard, the Court can only overturn a Magistrate Judge's ruling if the Court is left with "the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997).

Specifically, Magistrate Judge Daly found that only three grievances were relevant to the underlying Complaint. Those grievances were filed on November 2, 2014; May 18, 2015; and June 2, 2017. Regarding the November 2014 grievance, plaintiff wrote regarding deprivation of medical treatment to treat the hole in his heart and requests he be provided with heart surgery to repair the

4

hole. As to the May 2015 grievance, plaintiff states he is concerned with improper medical treatment due to his continued "heart pains." Plaintiff requested he be sent to an outside hospital for a TEE as recommended by Dr. Trost (but later denied in collegial). Finally, the June 2017 grievance, again, states plaintiff is being deprived of proper medical attention for his heart condition and that he wants to be taken for a TEE procedure. Plaintiff also complains of unsanitary living conditions.

In recommending to this Court that the relevant grievances were never fully exhausted prior to filing suit, Judge Daly's Report finds as follows:

> Defendants argue Plaintiff failed to follow proper procedure to fully appeal the grievances he filed prior to filing suit. Plaintiff asserts medical and prison staff at Menard were well aware of his medical issues and that he filed and appealed multiple relevant grievances to the ARB to fully exhaust his administrative remedies. Plaintiff failed to properly exhaust any of the three grievances.
>
> Plaintiff filed the November 2, 2014 grievance as an emergency and when it was denied as an emergency, he appealed directly to the ARB rather than following the written instructions to submit it through the normal process. In *Thornton*, a prisoner submitted an emergency grievance regarding the conditions of his cell in segregation and later received a letter stating that his grievance did not constitute an emergency. 428 F.3d at 692. He did not appeal the grievance and did not submit the grievance through the normal grievance process. *Id.* at 693. The prisoner was transferred to a different cell but proceeded to file an action regarding the conditions of the original cell, and the district court dismissed the action for failure to exhaust administrative remedies. *Id.* On appeal, the state defendants argued that the prisoner failed to complete the grievance process because he did not submit the grievance through the normal grievance process. *Id.* at 694. The Seventh Circuit Court of Appeals disagreed, noting, "There is nothing in the current regulatory text, however, that requires an inmate to file a

new grievance after learning only that it will not be considered on an emergency basis."[3]  *Id.*  The Seventh Circuit reversed the judgment of the district court on the basis that prisoners are not required to "appeal grievances that were resolved as [the prisoner] requested and where money damages were not available" because, in such instances, no further remedy is available.  *Id.* at 695-97.

The instant case is distinguishable from *Thornton*.  Although prisoners may not be required by regulation to submit a new grievance after learning only that it is not considered an emergency, Plaintiff received written instructions to submit the grievance through the normal non-emergency process.  Notably, prisoners must follow the prison's rules to properly exhaust administrative remedies, *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002), and Plaintiff failed to complete the normal grievance process after receiving reasonable instructions to do so is.  Significantly, unlike *Thornton*, Plaintiff's grievance was not resolved as he had not received the surgery requested.  Plaintiff did not exhaust his administrative remedies with the November 2, 2014 grievance.

With regard to the May 18, 2015 grievance, Plaintiff failed to appeal this grievance to the ARB; therefore, this grievance was not exhausted.

Plaintiff eventually followed the proper procedures with regard to filing the June 2, 2017 grievance.  However, he did not properly exhaust his administrative remedies with this grievance either.  The ARB response was sent to Plaintiff on July 31, 2017.  Plaintiff filed this lawsuit on July 19, 2017, prior to receiving the response from the ARB.  According to the Rule 504, the ARB will submit a written report of its findings and recommendations to the Director who shall review the same and make a final determination within 6 months of receipt of the appeal.  The inmate's administrative remedies are not exhausted until the Director rules on the appeal through the Board.  Since the ARB's

---

[3] The undersigned notes that the Department of Corrections has since amended the regulatory text, although the amendment occurred after the relevant time period in the instant action.  As of April 1, 2017, the regulations state, "If the Chief Administrative Officer determines that the grievance should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process."  20 Ill. Admin. Code § 504.840.

response to Plaintiff's June 2, 2017 grievance was not dated until July 31, 2017, Plaintiff's filing of this lawsuit on July 19, 2017 was premature.[4]

Here, the Court agrees with Magistrate Judge Daly's analysis in the Report and finds that defendants are entitled to summary judgment. Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). An inmate who fails to properly take each and every step of the administrative process regarding grievances has failed to exhaust his remedies. *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002).

To file a proper grievance, an IDOC inmate must submit his complaint within 60 days after occurrence of the problem to his institutional counselor. 20 ILL. ADMIN. CODE § 504.810(a). If the counselor cannot resolve the issue, it gets considered by a Grievance Officer who then renders a written recommendation to the Chief Administrative Officer ("CAO"), which is most typically the Warden. This written report is made within 2 months of receipt of the grievance "when

---

[4] The Court notes Defendants also argue the grievance lacked necessary substantive information, it failed to identify Defendants, and it was not filed within the 60 day timeframe as required under the Code. These issues need not be considered as the Court has already concluded that the lawsuit was prematurely filed because Plaintiff did not wait for final denial of his appeal prior to filing suit.

7

reasonably feasible under the circumstances." *Id*. §504.830(e). The CAO then informs the inmate of the decision. *Id*.

To appeal the decision of the CAO, an inmate must write to the Administrative Review Board ("ARB") within 30 days. *Id*. § 504.850(a). The ARB will then submit a written document containing its findings and recommendations to the Director whose job it is to review the same and make a final decision on the grievance within 6 months of receipt of the appeal. 20 ILL. ADMIN. CODE § 504.850(d) and (e). Alternatively, a grievance may be handled as an emergency if the inmate sends it directly to the CAO. *Id.* § 504.840. The CAO then makes a determination on whether the grievance warrants expedited processing and if so, will respond directly to the inmate. *Id*.

It is clear to the Court, based upon the grievance process laid out above, that Magistrate Judge Daly made no error in her analysis in finding that plaintiff did not exhaust his administrative remedies as it pertains to the three relevant grievances. Additionally, the Court notes that there is nothing contained in plaintiff's "objections" to the Report that he had not stated previously, he simply rehashes the same arguments.[5] Further, the majority of plaintiff's submission addresses topics beyond the content of the Report. Such topics include: arguing

---

[5] The Court is aware that plaintiff has filed one new grievance in his exhibits attached to his objections. Doc. 119, Ex. 1. The grievance is very difficult to read however it appears it may be the first complaint written at Menard asking for a doctor to see him regarding a heart murmur. *See id*. at Ex. 2, response from nursing supervisor informing plaintiff he had "been placed on Dr. Trost line to be evaluated for concerns of heart murmur/hole in heart. Please follow sick call process for further health concerns." The grievance, based on the supporting document from the nursing supervisor, does not request surgery nor does it seek care from an outside hospital/medical facility as do the grouping of the three relevant grievances analyzed above. Thus, the Court does not consider this grievance exhibit pertinent to plaintiff's Complaint.

8

for a "continuing violation" determination such that the statute of limitation has not run and relentless allegations that defendants have continued to withhold paperwork from him. Neither issue is addressed by the Report nor relevant here; however, the Court finds it necessary to point out to plaintiff that it is apparent that he does indeed have the paperwork necessary to advocate for his claims.

To begin, plaintiff has filed the same exhibits numerous times throughout this litigation in a haphazard manner, making the review of his motions and the current objections most difficult. Here, specifically, it is hard for the Court to follow plaintiff's contentions that he is without the necessary paperwork as the relevant grievances have been on record as far back as February 12, 2018, wherein the documents were filed as exhibits in a standalone entry in conjunction with plaintiff's motion for preliminary injunction. *See* doc. 81. Additionally, plaintiff asserts that certain defendants have violated court orders by not sending any requested material, however, defendants Brooks, Bulter, Lashbrook, and Walls made clear on June 5, 2018, that they purposefully did not submit any paperwork to plaintiff as co-defendants had already disclosed the same documents. *See* doc. 115, § 4. Plaintiff is also concerned that material provided is "blacked out" such that, presumably, information imperative to him is being kept secret. Again however, defendants made clear that the blacked out portions of grievance logs – NOT any of the grievances themselves – is to protect the privacy of other inmates whose names are on the logs but not included in this suit. *Id.*

9

This Court cannot conclude that plaintiff is without information sufficient to demonstrate he exhausted his administrative remedies prior to filing suit. *See also*, doc. 114 at ¶ 6 ("Despite Plaintiff's implication that there are more documents than he has received, Defendants have attached all 116 pages of grievance records received via subpoena from the Illinois Department of Corrections; all 34 pages of grievance records received via subpoena from the Custodian of Records at Menard Correctional Center; and 14 pages of counseling records received via subpoena from Menard Correctional Center"). Plaintiff has raised the same arguments in his objections numerous times and based on the defendant's filings and plaintiff's attachment of grievances and accompanying documents himself, the Court cannot postulate more may be out there to support plaintiff's position – particularly so, since plaintiff has not once stated with specificity what documents he believes he is missing.

Finally, the Court finds that plaintiff's allegations that Magistrate Judge Daly is "biased" and "prejudiced" against plaintiff are unfounded. There is nothing contained in the Report that would support such accusations. Indeed, the Report mechanically and appropriately applies an exhaustion of remedies analysis to arrive at the outcome that defendants' summary judgment motions must be granted.

Accordingly, the Court **ADOPTS** the Report in its entirety (doc. 118). The Court **GRANTS** the motions for summary judgment for failure to exhaust

administrative remedies (docs. 97 and 100). Thus, the claims against all defendants are hereby **DISMISSED WITHOUT PREJUDICE.**

    **IT IS SO ORDERED.**

Judge Herndon
2018.07.02
10:38:18 -05'00'

**United States District Judge**